UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACE AMERICAN INSURANCE CO. a/s/o ERIC SLIFKA, | * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 15-cv-10200-ADB |
| OYSTER HARBORS MARINE, INC., et al. | * * * | |
| Defendants. | * * | |

## MEMORANDUM AND ORDER ON
## FLORIDA BOW THRUSTER, INC.'S MOTIONS TO DISMISS

BURROUGHS, D.J.

Plaintiff Ace American Insurance Co. ("Ace"), as subrogee of Eric Slifka, initiated this action against Oyster Harbors Marine, Inc. ("Oyster Harbors") concerning a vessel that was sold by Oyster Harbors to Slifka and later sustained fire damage. Additional parties have since joined the case, including the vessel's manufacturer, Regulator Marine, Inc. ("Regulator"), the distributor and installer of the vessel's bow thruster, Florida Bow Thrusters, Inc. ("Florida Bow"), and the manufacturer of the bow thruster, Vetus Maxwell, Inc. ("Vetus Maxwell"). Currently pending before the Court are Florida Bow's motions to dismiss Vetus Maxwell's crossclaims against it for lack of personal jurisdiction and improper venue [ECF No. 52] and for failure to state a claim [ECF No. 56]. For the reasons that follow, the Court GRANTS the motion to dismiss for lack of personal jurisdiction and improper venue [ECF No. 52] and DENIES the motion to dismiss for failure to state a claim as moot. [ECF No. 56].

**I.     BACKGROUND**

In June 2011, Oyster Harbors, located in Massachusetts, agreed to purchase a 34-foot yacht later named "E=mc$^2$" (the "Vessel") from Regulator, the Vessel's manufacturer. [ECF No. 7 at ¶¶ 6−8] ("Complaint"). The sale included the installation of a Vetus Maxwell brand bow thruster on the Vessel. Compl. ¶ 17; [ECF No. 65-6 at ¶¶ 6−8]. Regulator engaged Florida Bow, a distributor of Vetus Maxwell products, to perform the installation, which was completed prior to the Vessel being transported to Massachusetts. [ECF No. 45 at 15−16]; [ECF No. 53-1 at ¶¶ 20−21]; [ECF No. 65-6 at ¶¶ 6, 8, 15]. Shortly after completing the purchase of the Vessel, Oyster Harbors sold the Vessel to Slifka. Compl. ¶¶ 6−7. A few years later, on or around July 11, 2014, Slifka was operating the Vessel in the Nantucket Harbor when a fire ignited onboard. Id. ¶¶ 9−10. After noticing a burning odor and seeing smoke near the Vessel's center console, Slifka moored the Vessel, turned off the battery, and boarded another boat that was passing by. Id. ¶¶ 10−12. Although the fire severely burned the Vessel, no other person or property appears to have been injured or damaged. Id. ¶ 13.

Ace, as subrogee of Slifka, brought the initial lawsuit against Oyster Harbors pursuant to this Court's admiralty and maritime jurisdiction, 28 U.S.C. § 1333(1), seeking to recover at least $200,000 for the damage to the Vessel and asserting claims for breach of the implied warranty of fitness for a particular purpose and the implied warranty of merchantability, negligence, and strict liability. Compl. ¶¶ 19−34. Oyster Harbors then filed a third-party complaint against Regulator for breach of warranty, indemnification, and contribution. [ECF No. 10 at ¶¶ 9−22]. Following an inspection of the Vessel by the parties on July 15, 2016, Ace's expert determined that the Vessel's bow thruster was the likely cause of the fire. [ECF No. 34 at 1]. The parties suspended the examination of the evidence to notify Florida Bow and Vetus Maxwell of the

potential claims against them and to invite them to participate in the proceedings. Id. at 2. On July 27, 2016, the Court granted the parties' joint motion to stay the action for 60 days. [ECF Nos. 33, 35]. Regulator eventually filed a fourth-party complaint against Florida Bow and Vetus Maxwell, asserting claims for breach of warranty, negligence, strict liability, common law indemnification, and contribution.[1] [ECF No. 41]. Vetus Maxwell in turn filed counterclaims for common law indemnification and contribution against Regulator, a crossclaim for common law indemnification against Oyster Harbors, and crossclaims for express and implied contractual indemnification, common law indemnification, contribution, and breach of contract against Florida Bow. [ECF No. 45]. On February 13, 2018, the Court held a hearing on Florida Bow's pending motion to dismiss Vetus Maxwell's crossclaims against it for lack of personal jurisdiction and improper venue.[2]

## II. LEGAL STANDARD

Where, as here, a party asserts grounds for dismissal that are based both on the merits and on jurisdictional deficiencies, the jurisdictional questions must be resolved prior to reaching the merits. See Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted . . . must be decided after and not before the court has assumed jurisdiction over the controversy."); accord Zeus Projects Ltd. v. Perez y Cia. de P.R.,

---

[1] Oyster Harbors also filed crossclaims for indemnification and contribution against Vetus Maxwell, which are not currently at issue. [ECF No. 46].
[2] Florida Bow also filed motions to dismiss Regulator's claims against it for lack of personal jurisdiction and improper venue and for failure to state a claim. [ECF Nos. 50, 54]. Regulator and Florida Bow ultimately agreed that they were contractually required by the terms of a forum selection clause to litigate in Florida. Accordingly, Regulator voluntarily dismissed its claims against Florida Bow and refiled them in the United States District Court for the District of Florida, Orlando Division. See Regulator Marine, Inc. v. Florida Bow Thrusters, Inc., 17-cv-1056-ORL-31-GJK (M.D. Fla. June 9, 2017). That action has been stayed pending the resolution of the action before this Court. Id. Florida Bow's motions to dismiss Regulator's claims were therefore denied as moot. [ECF No. 71].

3

Inc., 187 F.R.D. 23, 27 (D.P.R. 1999) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1445, at 344 (2d ed. 1990)) ("A federal court must have personal jurisdiction over a third-party defendant before it may adjudicate the third-party claim.").

Vetus Maxwell, as the crossclaim plaintiff, "has the burden of establishing that jurisdiction over the defendant lies in the forum state." Ferrara v. Voyport II, LLC, No. 16−12024, 2017 WL 1347672, at *4 (D. Mass. Apr. 7, 2017) (quoting Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016)). Here, the Court will employ the "prima facie method" for determining whether Vetus Maxwell has met its burden, as it is the most common approach and the one that both Vetus Maxwell and Florida Bow adopted in briefing this motion. Id. (quoting Baskin-Robbins, 825 F.3d at 34) (citations and internal quotation marks omitted); see [ECF Nos. 53 at 9; 65 at 8]. Under this standard, Vetus Maxwell must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Bohnenberger v. MCBC Hydra Boats, LLC, No. 16−11368, 2017 WL 3976566, at *1 (D. Mass. Sept. 7, 2017) (quoting Baskin-Robbins, 825 F.3d at 34). The Court will "take the facts from the pleadings and whatever supplemental filings (such as affidavits) are contained in the record, giving credence to the plaintiff's version of genuinely contested facts." Id. (quoting Baskin-Robbins, 825 F.3d at 34). It will then "add to the mix facts put forward by the [defendant], to the extent that they are uncontradicted." Id. (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 24 (1st Cir. 2005)). Notwithstanding the liberality of the prima facie approach, the Court will not "credit conclusory allegations or draw farfetched inferences." Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09−10138, 2011 WL 2413792, at *1 (D. Mass. June 16, 2011) (quoting Ticketmaster–N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

## III. DISCUSSION

### A. Jurisdictional Facts

Florida Bow is a family-owned corporation organized and existing under the laws of the State of Florida with its principal office in Florida. [ECF No. 53-1 at ¶¶ 2, 5]. It has never had an office in Massachusetts; been registered to do business in Massachusetts; maintained a registered agent for service of process in Massachusetts; listed a mailing address or telephone number in Massachusetts; owned or leased property in Massachusetts; held corporate meetings in Massachusetts; or had an officer or director who was a resident of Massachusetts while holding such position. Id. at ¶¶ 6–16.

Florida Bow acknowledges, however, that it ships to and installs some products in Massachusetts. According to Vetus Maxwell, between May 2009 and May 2017, Florida Bow shipped "various parts and products" to Massachusetts on 84 separate occasions, some of which included product installations performed by its employees for whom Florida Bow had obtained nationwide liability insurance. [ECF No. 65 at 5–6, 9, 14]. Florida Bow also admits that its website advertises its installation and servicing of bow thrusters nationwide, and that it occasionally participates in boating trade shows in Massachusetts. [ECF No. 68 at 1]. Vetus Maxwell adds that Florida Bow's website displays at least one customer testimonial written by a Massachusetts resident, and that it suggests that Florida Bow attends trade shows in other New England states that market to Massachusetts residents. [ECF No. 65 at 6].

With regard to the sale of the Vessel, Regulator contracted Florida Bow for the purchase and installation of the Vetus Maxwell bow thruster for the price of $6,000. [ECF No. 53-1 at ¶¶ 20–23]. A work order, which identified Oyster Harbors and its Massachusetts address as the customer and shipping destination, was affixed to the Vessel at the time that Florida Bow

5

installed the bow thruster. [ECF No. 65-6 at ¶ 9−11]. On or around June 27 or 28, 2011, Florida Bow performed the installation at Regulator's facility in Edenton, North Carolina but Florida Bow was not involved in transporting the Vessel to Oyster Harbors. [ECF No. 53-1 at ¶¶ 20−24]. The Vessel was one of three Regulator yachts on which Florida Bow installed a bow thruster for sale to Oyster Harbors in 2011. [ECF No. 65-6 at ¶ 15].

    **B.**     **Personal Jurisdiction Generally**

In an admiralty case, "the personal jurisdiction analysis includes a twist not present in diversity cases, although ultimately there is no practical difference in the way in which the Court proceeds towards its determination." Bohnenberger, 2017 WL 3976566, at *4 (quoting Zeus Projects Ltd., 187 F.R.D. at 28). Where the Court's subject matter jurisdiction is based on admiralty, "the court's jurisdiction over [the] parties is national in scope," meaning that "the Due Process Clause of the Fifth Amendment, and not the Fourteenth Amendment, controls." Id. (citing Pike v. Clinton Fishpacking, Inc., 143 F. Supp. 2d 162, 166 (D. Mass. 2001)). "[U]nder the Fifth Amendment, a plaintiff need only show that the defendant has adequate contacts with the United States as a whole, rather than with a particular state." Id. (quoting United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001)).

Notwithstanding the Court's broad jurisdictional reach under the Fifth Amendment, the Court's power over a defendant is limited by the requirement that a defendant "must be served pursuant to a federal statute or a Civil Rule." Zeus Projects Ltd., 187 F.R.D. at 28 (citing United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1085 (1st Cir. 1992)); see Swiss Am. Bank, Ltd., 274 F.3d at 618. Although there is "no federal statute providing for service on defendants in admiralty cases," Zeus Projects Ltd., 187 F.R.D. at 29, Rule 4 of the Federal Rules of Civil Procedure provides that service may be accomplished on a defendant that is "subject to

the jurisdiction of a court of general jurisdiction in the state where the district court is located." Bohnenberger, 2017 WL 3976566, at *4 (quoting Fed. R. Civ. P. 4(k)(1)). Accordingly, the Court must determine whether Florida Bow may be haled into a court of general jurisdiction in Massachusetts.

"In Massachusetts, a court may exercise personal jurisdiction over a foreign defendant if such jurisdiction is authorized by state statute and its exercise does not offend the Due Process Clause of the Fourteenth Amendment." Id. (quoting Pike, 143 F. Supp. 2d at 166); see Zeus Projects Ltd., 187 F.R.D. at 29 ("[T]he Court returns to the familiar realm of minimum contacts, the long-arm statute, and the Fourteenth Amendment."). Because the First Circuit has generally treated "the limits of Massachusetts' long-arm statute as coextensive with those of the Due Process Clause," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), the Court may "sidestep the statutory inquiry and proceed directly to the constitutional analysis." Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).[3]

There are two types of personal jurisdiction: general and specific. See United Elec. Workers, 960 F.2d at 1088. General jurisdiction exists "when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in

---

[3] The Massachusetts Supreme Judicial Court generally "has interpreted the state's long-arm statute 'as an assertion of jurisdiction over the person to the limits allowed by the Constitution of the United States.'" Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (quoting Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002)); see Adelson v. Hananel, 65 F.3d 75, 80−81 (1st Cir. 2011) (Massachusetts long-arm statute has been construed "as being coextensive with the limits permitted by the Constitution"). The First Circuit has recently "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution," Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 4 (1st Cir. 2016), but neither party has raised this issue. The Court therefore begins with the constitutional analysis. See Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 244 (D. Mass. 2017); Bohnenberger v. MCBC Hydra Boats, LLC, 2017 WL 3976566, at *4 n.8 (D. Mass. Sept. 7, 2017) (citing recent Massachusetts cases that interpret the Massachusetts long-arm statute as allowing for the assertion of personal jurisdiction to the limits permitted by the United States Constitution).

continuous and systematic activity, unrelated to the suit, in the forum state." Saeed v. Omex Sys., Inc., No. 16−11715, 2017 WL 4225037, at *2 (D. Mass. Sept. 22, 2017) (quoting United Elec. Workers, 960 F.2d at 1088). To establish specific jurisdiction, the plaintiff must show that "the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994) (quoting United Elec. Workers, 960 F.2d at 1088–89). Vetus Maxwell contends that this Court may exercise general or specific jurisdiction over Florida Bow.

C.  **General Jurisdiction**

"When a court 'exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum [State], the [forum State] has been said to be exercising 'general jurisdiction' over the defendant.'" Fed. Home Loan Bank of Bos. v. Moody's Corp., 821 F.3d 102, 106 n.2 (1st Cir. 2016), rev'd on other grounds, Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 9 (1984)). General jurisdiction demands "affiliations 'so 'continuous and systematic' as to render [the foreign corporation] essentially at home in the forum State.'" Id. (quoting Daimler AG v. Bauman, 134 S. Ct. 746, 758 n.11 (2014)).[4] In Daimler, 134 S. Ct. at 760 (quotation omitted), the court explained that with respect to a corporate defendant, "the place of incorporation and principal place of business are paradigm bases for general jurisdiction." There may be an "'exceptional case' where general jurisdiction could be proper in a state other

---

[4] Vetus Maxwell relies on Cossaboon v. Maine Medical Center, 600 F.3d 25 (1st Cir. 2010) for the standard for general jurisdiction. As this Court has previously recognized, Cossaboon predates two recent Supreme Court opinions—Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011) and Daimler AG v. Bauman, 134 S. Ct. 746 (2014)—that appear to have established a more stringent test for general jurisdiction. See Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 368 (D. Mass. 2017) ("Cossaboon may no longer provide adequate guidance on the law concerning general jurisdiction").

8

than one where a corporation is incorporated or has its principal place of business," but the court did not explain what circumstances would give rise to such an exceptional case. Medici v. Lifespan Corp., 239 F. Supp. 3d 355, 368 (D. Mass. 2017) (quoting Daimler, 134 S. Ct. at 761 n.19).

Here, general jurisdiction hinges on Florida Bow's shipment to and installation of marine products in Massachusetts and attendance at trade shows in Massachusetts. Florida Bow is incorporated under Florida law and maintains its principal place of business in Florida. As stated above, it has never had an office in Massachusetts, registered to do business in Massachusetts, maintained a registered agent in Massachusetts, or owned or leased property in Massachusetts. According to Vetus Maxwell, Florida Bow has made 84 shipments of marine products over the eight-year period between May 2009 and May 2017. [ECF No. 65 at 9, 17−18]. The supporting evidence, however, does not establish the dates of these shipments, the types of products shipped or their value, or that a Florida Bow employee performed any related installations. [ECF No. 65-3]. This small number of intermittent shipments of unspecified products, and Florida Bow's attendance at an occasional trade show, do not in any way suggest that Florida Bow is "essentially at home" in Massachusetts or otherwise demonstrate that this is an exceptional case for finding general jurisdiction. See Presby Patent Trust v. Infiltrator Sys., Inc., No. 14−542, 2015 WL 3506517, at *6 (D.N.H. June 3, 2015) (no general jurisdiction where defendant's contacts with the forum state included employment of a sales representative, attendance at trade shows, and marketing and sales of its products). Thus, the Court does not have general jurisdiction over Florida Bow.

### D. Specific Jurisdiction

The Court applies the following three-part test to determine whether it may exercise specific jurisdiction:

> [f]irst, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

Prtizker, 42 F.3d at 60–61 (quoting United Elec. Workers, 960 F.2d at 1089). These are known as the "relatedness," "purposeful availment," and "reasonableness" prongs. Id.

#### 1. Relatedness

The relatedness inquiry examines whether "'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). This is a "flexible, relaxed standard," Newman v. Eur. Aeronautic Def. & Space Co. EADS N.V., No. 09−10138, 2011 WL 2413792, at *4 (D. Mass. June 16, 2011) (quoting Astro–Med, Inc., 591 F.3d at 9), but "still requires a causal relationship between [the plaintiff's] claim and [the defendant's] forum-related conduct." Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 244 (D. Mass. 2017) (citing Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005)). It "falls between proximate and 'but for' causation, with foreseeability shaping most relatedness determinations." Micheli v. Techtronic Indus., No. 11−10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) (citing Nowak v. Talk How Invs., Ltd., 94 F.3d 708, 715−16 (1st Cir. 1996)); Katz, 244 F. Supp. 3d at 244 ("Though not precisely proximate cause, 'due process demands something like a 'proximate cause' nexus.'" (quoting Harlow, 432 F.3d at 61)).

It is undisputed that Florida Bow installed the bow thruster on the Vessel in North Carolina, did not participate in transporting the Vessel to Massachusetts, and was not a party to the chain of transactions that brought the Vessel to Massachusetts. There is no evidence that Florida Bow's website, attendance at trade shows, or shipment or installation of other marine products in Massachusetts bear any connection to the claims relating to the Vessel. See Old United Cas. Co. v. Flowers Boatworks, No. 15−43, 2016 WL 1948873, at *4 (D. Me. May 3, 2016) (describing weaknesses in plaintiff's relatedness argument, including that plaintiff had not shown that the use of the defendant manufacturer's product "resulted from [the defendant's] website or its magazine advertising or its presence at trade shows").

The Court recognizes, however, that where the alleged defective product or installation caused an injury in the forum State, the Court may consider "whether [defendant's] contacts with Massachusetts relate to the sale or marketing of the product causing [plaintiff's] injury." Lewis v. Dimeo Const. Co., No. 14−10492, 2015 WL 3407605, at *4 (D. Mass. May 27, 2015); see also Katz, 244 F. Supp. 3d at 245 (no relatedness where the defendant was a component parts manufacturer that had "never manufactured any part of the [component part] in Massachusetts, nor [had] it marketed, sold, or distributed this component in the Commonwealth"). In Lewis, 2015 WL 3407605, at *2−4, the court found that the relatedness prong was satisfied where the defendant introduced a defective product into the stream of commerce and its employees traveled to Massachusetts on hundreds of occasions for meetings, training, research, and field testing of prototypes of the product. Florida Bow's alleged contacts with Massachusetts are negligible in comparison. Although Florida Bow installed bow thrusters on two other Regulator yachts that were ultimately sold to Oyster Harbors in 2011, the evidence does not show that these installations were performed in Massachusetts or that Florida Bow participated in the sale or

11

transportation of those vessels to Oyster Harbors. Moreover, there is no credible support for finding that Florida Bow shipped products to Massachusetts during the relevant time period that are comparable to the bow thruster installed on the Vessel.[5]

The affidavit of Vetus Maxwell's Chief Financial Officer and the accompanying exhibit show, at most, that Florida Bow shipped "marine equipment" to Massachusetts at various points in time between May 2009 and May 2017. [ECF Nos. 65, 65-3]. The evidence does not show the date of any shipment, the type, volume, or value of the marine equipment, or whether a Florida Bow employee traveled to Massachusetts to perform related services. Thus, Vetus Maxwell has not shown the existence of any relationship between its claims and Florida Bow's contacts with Massachusetts. The Court will nonetheless proceed to the purposeful availment prong.[6]

---

[5] When considering the exercise of specific jurisdiction, the relevant "contacts must generally be limited to those before and surrounding the accrual of the cause of action." Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) ("[I]n most cases, contacts coming into existence after the cause of action arose will not be relevant."); see, e.g., Lewis v. Dimeo Const. Co., No. 14−10492, 2015 WL 3407605, at *2 n.2 (D. Mass. May 27, 2015) (declining to consider contacts occurring after the alleged injury). Vetus Maxwell does not provide dates for the 84 shipments to Massachusetts, and states only that they were made within the eight-year period from May 2009 to May 2017. Even taking a liberal view of the relevant time period, many of the alleged shipments may have occurred outside of the period of time between the installation of the bow thruster in June 2011 and the fire that damaged the Vessel in July 2014.

[6] District courts in this Circuit have held that "neither the Supreme Court nor the [First Circuit] has expressed concern about the causal link in cases analyzing the stream-of-commerce theory of personal jurisdiction." Micheli v. Techtronic Indus., No. 11−10503, 2012 WL 6087383, at *9 (D. Mass. Mar. 1, 2013) ("In stream-of-commerce cases, 'the jurisdictional hitch [instead] comes from the requirement of purposeful availment.'"(quoting Unicomp, Inc. v. Harcos Pigments, Inc., 994 F. Supp. 24, 26 (D. Me. 1998))); accord Old United Cas. Co. v. Flowers Boatworks, No. 15−43, 2016 WL 1948873, at *4 (D. Me. May 3, 2016); see Lewis, 2015 WL 3407605, at *4 n.3 ("In a products liability action where personal jurisdiction is predicated on [the] introduction of a product into the stream of commerce, the purposeful availment prong of the court's inquiry, rather than the question of relatedness, is most often dispositive."); see also J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) (plurality op.) (citations and internal quotation marks omitted) ("In products-liability cases . . . , it is the defendant's purposeful availment that makes jurisdiction consistent with traditional notions of fair play and substantial justice").

2. <u>Purposeful Availment</u>

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum [S]tate." <u>Katz</u>, 244 F. Supp. 3d at 245 (citing <u>Weinberg v. Grand Circle Travel, LCC</u>, 891 F.Supp.2d 228, 246 (D. Mass. 2012)). The focus of the inquiry is "on acts 'by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" <u>Id.</u> (quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). "The cornerstones of this inquiry are voluntariness and foreseeability." <u>C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 66 (1st Cir. 2014). Foreseeability "requires that the contacts . . . be of a nature that the defendant could 'reasonably anticipate being haled into court [in the forum State].'" <u>Phillips v. Prairie Eye Ctr.</u>, 530 F.3d 22, 28 (1st Cir. 2008) (quoting <u>Adelson</u>, 510 F.3d at 50). Voluntariness "requires that the defendant's efforts are 'purposefully directed'" toward the residents of the forum. <u>Afunday Charters, Inc. v. Spencer Yachts, Inc.</u>, 261 F. Supp. 3d 257, 263 (D.P.R. Aug. 2, 2017) (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985)).

"The First Circuit has refined the purposeful availment test where jurisdiction is premised on a stream-of-commerce theory," by adopting the stream-of-commerce "plus" standard of the plurality opinion in <u>Asahi Metal Industries Company v. Superior Court of California</u>, 480 U.S. 102, 112 (1987). <u>Micheli</u>, 2012 WL 6087383, at *9; <u>see</u> <u>Newman</u>, 2011 WL 2413792, at *5 ("<u>Asahi</u> gave rise to the 'stream of commerce plus' standard, later adopted by the First Circuit in <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 683 (1st Cir. 1992) . . ."). Under the plurality opinion in <u>Asahi</u>, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." <u>Asahi</u>, 480 U.S. at 112. The Court must consider whether any additional conduct of Florida Bow shows an intent or purpose

to serve the forum state, such as, "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.

Here, satisfaction of the purposeful availment prong rests on Florida Bow's shipment of marine equipment to Massachusetts on 84 separate occasions over eight years, occasional attendance at trade shows in Massachusetts and neighboring states, the display of at least one Massachusetts customer's testimonial on its website, maintenance of nationwide liability insurance coverage, and that, based on a work order posted on the Vessel at the time of the bow thruster installation, Florida Bow knew that Regulator intended to sell the Vessel to a buyer in Massachusetts. Florida Bow analogizes this case to World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980), where plaintiffs purchased an automobile in New York and, one year later, were injured while driving it through Oklahoma. Id. at 288. Plaintiffs brought a products liability action in Oklahoma against the automobile's manufacturer, importer, regional distributor, and retail dealer. The court found that the Oklahoma court lacked personal jurisdiction over the regional distributor and retail dealer, because those defendants did not have any "contacts, ties, or relations" with Oklahoma, and the "mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." Id. at 298−99 (citations and quotation marks omitted). Florida Bow equates Regulator transporting the Vessel into Massachusetts after Florida Bow installed the bow thruster in North Carolina to the World-Wide Volkswagen plaintiffs driving the automobile into Oklahoma after purchasing it in New York.

Florida Bow overlooks several facts that are relevant to the purposeful availment analysis. In World-Wide Volkswagen, 444 U.S. at 289, neither defendant did any business in Oklahoma, shipped or sold any products to or in Oklahoma, or purchased advertisements in any media calculated to reach Oklahoma. There was no evidence "that any automobile sold by [the regional distributor] or [the retail dealer] ha[d] ever entered Oklahoma with the single exception" of the plaintiffs' vehicle. Id. Here, Florida Bow at least shipped and installed some products in Massachusetts, occasionally attended trade shows in Massachusetts, and installed bow thrusters on two other Regulator yachts that were ultimately sold to Oyster Harbors during the relevant time period. Thus, it is more foreseeable that the Vessel would reach Massachusetts than that the automobile would reach Oklahoma in World-Wide Volkswagen.

Vetus Maxwell nevertheless cannot carry its burden through broadly worded allegations and imprecise evidence. Florida Bow has shipped some marine equipment to Massachusetts, but as discussed above, the lack of detail about these shipments prevents the Court from drawing any inference that they were significant or numerous, that they included similar products to the bow thruster at issue, or that Florida Bow employees traveled to Massachusetts to install or service the equipment. In Katz v. Spiniello Companies, 244 F. Supp. 3d 237 (D. Mass. 2017), the court found similarly broad allegations to be insufficient to establish purposeful availment, where plaintiffs claimed that the defendant's defective component part entered Massachusetts after "it was manufactured outside of Massachusetts, sold outside of Massachusetts and installed in an aircraft outside of Massachusetts." Id. The court emphasized that the plaintiffs failed to show "any contacts between [defendant] and Massachusetts" related to the defective component part, that the defendant sought to "cultivate a market for its product in Massachusetts," or that the defendant took any action that caused the component part to end up in Massachusetts. Id. The

allegations that the defendant operated "various business entities" in Massachusetts, availed itself of "business opportunities" in Massachusetts, and advertised "its parts and services" in Massachusetts were no more persuasive. Id.

Similarly, proof of shipments to Massachusetts of some amount of marine equipment on undisclosed dates is insufficient to demonstrate that Florida Bow's contacts were purposeful, rather than isolated. Florida Bow's advertising of nationwide services on its website and nationwide liability coverage are also not suggestive of any effort to specifically cultivate a market in Massachusetts.[7] Vetus Maxwell culled one customer testimonial written by a Massachusetts resident on Florida Bow's website, but the website itself generally does not display the location or residence of the featured customers, and, importantly, did not identify this particular customer as hailing from Massachusetts [ECF No. 65-4]. Such evidence does not demonstrate an attempt to advertise directly to Massachusetts residents, so much as it shows that Florida Bow performed services for a Massachusetts resident at some unspecified point in time. Finally, the work order posted to the Vessel, at most, made Florida Bow aware that the Vessel had been sold to a Massachusetts customer, but mere awareness "that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." Asahi, 480

---

[7] Vetus Maxwell does not argue and has presented no evidence suggesting that the purposeful availment requirement is satisfied based on the accessibility or interactivity of Florida Bow's website. See Sportschannel New England Ltd. P'ship v. Fancaster, Inc., No. 09−11884, 2010 WL 3895177, at *5 (D. Mass. Oct. 1, 2010) (acknowledging that with respect to premising personal jurisdiction on a foreign defendant's website, most courts have adopted a "sliding scale in which the likelihood of personal jurisdiction is 'directly proportionate' to the level of interactivity of the website"). Vetus Maxwell, rather, references Florida Bow's website to the extent that it contains evidence of Florida Bow's attendance at trade shows in Massachusetts and other New England states, that it advertises its services nationwide, and that it displays a customer testimonial of at least one Massachusetts resident.

U.S. at 102; see Katz, 244 F. Supp. 3d at 246 ("[T]here must be more than a mere awareness or expectation a defendant's product will end up in the forum state.").[8]

After having parsed the unsubstantiated allegations, all that remains in support of specific jurisdiction is Florida Bow's attendance at trade shows in Massachusetts and neighboring states. The evidence does not show how often Florida Bow attended or participated in trade shows. Other than Florida Bow's own admission of occasional attendance at such events, Vetus Maxwell relies on irrelevant evidence showing that Florida Bow anticipated attending trade shows in 2017, long after this case was filed. Although attendance at trade shows in the forum State is one factor that supports a finding purposeful availment, standing alone, the occasional trade show suggests isolated rather than purposeful contact.

In sum, Vetus Maxwell's allegations and proof lack the "something more" required under the stream-of-commerce plus standard and therefore fail to establish purposeful availment. Asahi, 480 U.S. at 111.

3. Reasonableness

Because Vetus Maxwell "failed to satisfy the first two prongs of the due process inquiry, its argument for specific jurisdiction fails." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 61−62 (1st Cir. 2016). To be exhaustive, the Court will proceed to the reasonableness prong, which considers the question of "whether the exercise of jurisdiction over [the defendant] in the

---

[8] A customer service manager of Regulator stated in an affidavit that Florida Bow has installed "dozens of other bow thrusters" on Regulator vessels that were sold to Oyster Harbors over the course of Regulator and Florida Bow's ten-year relationship. [ECF No. 65-6 at ¶ 16]. The number of installations occurring in the relevant time period is unclear. Nothing in the affidavit suggests that these other installations took place in Massachusetts, that Florida Bow transported the vessels to Massachusetts, or that Florida Bow contracted directly with Oyster Harbors. These installations may have raised Florida Bow's awareness of the ultimate destination of its products placed in the stream of commerce, but without more, do not demonstrate Florida Bow's, as opposed to Regulator's, purposeful contact with Massachusetts.

circumstances of this case would, holistically viewed, offend traditional notions of 'fair play and substantial justice.'" Pritzker, 42 F.3d at 63 (quoting Burger King, 471 U.S. at 476) (further citations omitted). The following "gestalt factors" guide the analysis of the fairness of exercising specific jurisdiction over a defendant:

> (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Prizker, 42 F.3d at 63–64 (quoting United Elec. Workers, 960 F.2d at 1088). "The purpose of the gestalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close. In such cases the gestalt factors may tip the constitutional balance." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 717 (1st Cir. 1996).

Here, the gestalt factors generally favor Massachusetts or no particular jurisdiction. Massachusetts has an interest in obtaining jurisdiction over Florida Bow, considering that Florida Bow's installation of the bow thruster allegedly caused damage in Massachusetts. See, e.g., Bohnenberger, 2017 WL 3976566, at *8. Meanwhile, Florida Bow's burden of defending in Massachusetts is afforded little weight. See Old United Cas. Co., 2016 WL 1948873, at *8 ("[S]imply having to defend oneself in a forum other than one's home is not enough."). Vetus Maxwell is already defending against claims asserted by Regulator in Massachusetts, and if its claims against Florida Bow are not litigated here, they would likely be refiled in Maryland pursuant to a forum selection clause in the parties' governing agreement. Because commencing an action in Maryland would add a third pending action over the damage to the Vessel, the most efficient resolution of the controversy would likely be to exercise jurisdiction in Massachusetts. The burden and expense of a third action may be mitigated, though, if the parties stay any newly

18

filed action pending the outcome of this case, as Regulator and Florida Bow have done in the related action in Florida.

Ultimately, the relative convenience and efficiency of litigating in Massachusetts cannot outweigh Vetus Maxwell's failure to meet its burden on the first two prongs. Vetus Maxwell has therefore failed to establish that this Court has specific jurisdiction over Florida Bow.[9]

## IV. CONCLUSION

Because the Court lacks personal jurisdiction over Florida Bow, the motion to dismiss for lack of personal jurisdiction and improper venue [ECF No. 52] is <u>GRANTED</u>, and the motion to dismiss for failure to state a claim [ECF No. 56] is <u>DENIED</u> as moot.[10]

**SO ORDERED.**

February 23, 2018                                /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE

---

[9] Vetus Maxwell alternatively requests that the Court allow for jurisdictional discovery, which the district court may permit in its "broad discretion." <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 626 (1st Cir. 2001). Vetus Maxwell has presented no argument as to "why jurisdiction would be found if discovery were permitted," and the Court sees no reason to allow it. <u>Id.</u> Although Vetus Maxwell has a long-established business relationship with Florida Bow, it failed to provide sufficient information to the Court in support of jurisdiction, even with respect to the 84 shipments to Massachusetts that Vetus Maxwell made at Florida Bow's behest. [ECF No. 65 at 5, 17−18]; <u>see</u> <u>Boit v. Gar-Tec Prods., Inc.</u>, 967 F.2d 671, 681 (1st Cir. 1992) (noting that First Circuit has found jurisdictional discovery was warranted where plaintiff "had been diligent and was somewhat unfamiliar with his adversary's practices"). Because Vetus Maxwell has failed to satisfy the relatedness and purposeful availment requirements, and has not shown that discovery would lead to relevant evidence that Vetus Maxwell does not already have through years of doing business with Florida Bow, Vetus Maxwell is not entitled to conduct jurisdictional discovery.

[10] Because the Court lacks personal jurisdiction over Florida Bow, it need not reach Florida Bow's alternative argument that venue is improper in this district because Vetus Maxwell and Florida Bow are contractually bound by a forum selection clause to litigate their dispute in Maryland.

19